UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| EDWARD PAUL ENGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-69 JAR |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Edward Paul Engle brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* As explained below, the Court will reverse the decision and remand for further proceedings.

## BACKGROUND

**1. Procedural History**

On December 18, 2019, Engle protectively filed an application for DIB, alleging disability beginning August 15, 2019, due to: "Blind or low vision, Back Pain, Neck Pain, COPD, High Blood Pressure, Bad Eye Sight, Hard Hearing, Memory Loss, Antuitrin in heart, Lung Nodules." Tr. 64. His application was denied on February 20, 2020, and again upon reconsideration on March 5, 2020. A hearing was held before an administrative law judge ("ALJ") on December 21, 2021, where Engle amended his alleged disability onset date to June

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted, therefore, for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

14, 2018. On March 25, 2022, the ALJ denied Engle's claims for benefits, finding that vocational expert testimony supported a conclusion that Engle could perform his past relevant work as a Sales Clerk as well as other work existing in significant number in the national economy. Engle then filed a Request for Review of Hearing Decision/Order with the Appeals Council. That request was denied on March 1, 2023, and Engle timely filed the present action on April 26, 2023.

2. **Medical Records and Other Evidence Before the ALJ**

The Court adopts Engle's Statement of Uncontroverted Material Facts (ECF No. 10-1) to the extent they are admitted by the Commissioner. Regarding Engle's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## LEGAL STANDARD

To be eligible for DIB under the Social Security Act, Engle must prove that he is under a disability. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps evaluate whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4, the ALJ must assess the claimant's RFC—that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011)—and determine whether the claimant is able to perform his past relevant work. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

3

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## The Decision Of The ALJ

In Steps 1 through 3, the ALJ concluded that (1) Engle last met the insured status requirement of the Social Security Act on June 30, 2018 and had not engaged in substantial gainful activity during the period from his alleged onset date of June 14, 2018, through June 30, 2018; (2) Engle's severe impairments included degenerative disc disease of the cervical and lumbar spine, mild thoracolumbar scoliosis, and chronic obstructive pulmonary disease; and (3) these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found the Engle had the RFC to perform medium work as defined in 20 C.F.R § 404.1567(c) with the following restrictions:

> the claimant can occasionally climb ladders, ropes, or scaffolds and can frequently climb ramps and stairs. He can engage in frequent stooping, kneeling,

4

crouching, and crawling but is limited to occasional overhead reaching bilaterally. He can have no concentrated exposure to extreme heat, cold, humidity, wetness, dust, fumes or other pulmonary irritants, such as toxic or caustic chemicals.

Tr. 18.  Considering vocational expert testimony that a person with this RFC would be able to perform each and every duty of the job of Engle's previous job as a Sales Clerk, the ALJ found that Engle could perform his past relevant work.  Alternatively, she concluded that he could perform other jobs existing in significant number in the national economy, such as Laundry Worker, Hand Packager, and Linen Room Attendant.  The ALJ therefore concluded that Engle was not under a disability at any time from June 14, 2018,[2] through June 30, 2018.

## DISCUSSION

Engle now challenges the ALJ's RFC determination, especially as it relates to functional limitations resulting from injuries to his lumbar spine.  He claims that the ALJ failed to support her determination that he could perform medium work with any evidence of his ability to function in the workplace, instead relying on her own inferences from the clinical findings.  He further argues that these inferences were not reasonable and based on a mischaracterization of the record.  He accordingly reasons that remand is required because no reasonable mind would accept the RFC as adequately supported by the evidence.

RFC is the most a claimant can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own

---

[2]    In her decision, the ALJ stated that Engle was not under a disability "at any time from *August 24, 2019*"—Engle's previous alleged onset date—"through June 30, 2018, the date last insured."  Tr. 22 (emphasis added).  Because the ALJ noted that Engle amended his alleged onset date to June 14, 2018, earlier in her opinion and analyzed Engle's RFC between June 14 and June 30, the Court understands this to be an inadvertent error.

5

description of his symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record.  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In doing so, the ALJ must consider all the evidence relating thereto, including what are familiarly referred to as "the *Polaski* factors," that is, the "claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions."  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); see also 20 C.F.R. § 404.1529.

> Here, the ALJ summarized Engle's statements about his impairments:
>
> The claimant alleges that he is disabled due to chronic spinal pain and breathing problems due to chronic obstructive pulmonary disease. He testified that he sustained injuries to his neck and back during his service in the military and has suffered from chronic pain for many years. The claimant reported that he finally sought surgical treatment for his pain in 2018. He testified that he has had cervical and lumbar fusion surgeries. The claimant reported that his neck surgery was successful and resolved his symptoms. He indicated his lumbar surgery was less effective, and that he continues to suffer from chronic back pain. The claimant further testified that he has chronic obstructive pulmonary disease, which causes him to experience shortness of breath with exertion. He reported that he has a chronic cough and is sensitive to caustic chemicals, which exacerbate his breathing problems.

Tr. 19.  But the ALJ found that Engle's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id.*  Even though Engle had a longstanding history of chronic neck

6

and back pain which had been growing worse,[3] the ALJ noted that Engle "was still performing physically demanding factory work, and reported moving pallets at work, by hand." *Id.* (citing Tr. 459, 704). The ALJ also found that "his physical examination findings were largely within normal limits." *Id.* Moreover, Engle underwent a L5-S1 fusion surgery on August 21, 2018, and his follow up treatment records indicated that he experienced a good surgical outcome. Finally, the ALJ noted that Engle's neck pain was completely resolved after he underwent a cervical spinal fusion surgery on April 26, 2019. The ALJ thus concluded, "while the claimant does have longstanding spinal pathology, which is documented by diagnostic imaging, he was continuing to perform manual labor around the time of the date last insured, and his physical examination findings were largely unremarkable. A restriction to medium work, with the postural and reaching limitations outlined above, is reasonable." *Id.* at 20.[4]

This analysis is improper for several reasons. First, the ALJ's claim about Engle's physical activities during the relevant period are not supported by the record. To support her claim that Engle "was still performing physically demanding factory work, and reported moving pallets at work, by hand," the ALJ cites two treatment notes from June 12, 2018, and August 15, 2018, but these notes do not demonstrate that Engle was performing "physically demanding" work. Though the June 12 treatment note indicated, "Patient stated that he is moving palates [sic] at work by hand," and the August 15 note stated that Engle "is now doing factory work,"

---

[3]   With respect to Engle's lumbar spine, an MRI performed on June 14, 2018, found multilevel degenerative disc disease, resulting in severe left-sided, and moderate right-sided neural foraminal stenosis at L5-S1, and imaging from 2016 demonstrated mild thoracolumbar scoliosis. With respect to his cervical spine, a February 2019 MRI of the claimant's cervical spine demonstrated degenerative disc disease and degenerative arthritis resulting in mild central canal stenosis at C5-6, and neural foraminal narrowing between C3 and C7. Tr. 19-20.

[4]   The ALJ did not find persuasive prior administrative medical findings in reaching her conclusion. Tr. 20. When State agency consultants originally evaluated Engle, they evaluated him for a different disability period and for a different set of impairments. *See* ECF No. 10 at 6 n. 3.

7

neither of these notes indicates the intensity or nature of this work.  Tr. 459, 704.  In fact, the ALJ does not discuss what Engle's "factory work" involved at all in her decision—she appears to merely assume that this work was "physically demanding."  The only evidence in the record which indicates the duties of Engle's work for this period is Engle's description of the job in his Work History Report.  That description states that he worked as "Clerk/Production" for "QPI thru Manpower" from May 2018 through June 2018, and that his job duties involved "unpacking and repacking boxes," and lifting and carrying "diapers in cases, 7-10 feet, daily."  Tr. 251; *see also* Tr. 218 (listing date work ended as June 20, 2018).  The heaviest weight lifted was 10 pounds, and he frequently lifted—that is from one to two thirds of the workday—less than ten pounds.  The Court fails to see how moving cases of diapers weighing ten pounds or less supports an inference that Engle can perform medium work, that is, "lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  If the ALJ had good reasons for discounting Engle's description of this work or for assuming that it constituted medium work, she does not provide those reasons in her decision.

Moreover, neither of these notes demonstrate that Engle did any work *during* the relevant period: the June 12 note preceded the alleged disability onset date by two days, and the August 15 note followed the DLI by more than a month.  Engle's other treatment notes cast doubt that Engle was working during this period.  On July 2—again, two days after Engle's date last insured—his provider noted that Engle "is on temporary disability and not working for the last 3 weeks due to the pain."  Tr. 453.

The ALJ also ignored portions of these treatment notes that directly contradicted her conclusion.  For example, the sentence in Engle's August 15 treatment note stating that Engle "is now doing factory work," went on: "*but is unable to continue due to low back pain which is very*

8

*mechanical.*" Tr. 704 (emphasis added). The note also states that Engle reported his pain level was eight out of ten, that he had difficulty walking, and that he tried physical therapy, medications, and epidural steroid injections without relief. In fact, the purpose for the August 15 visit was to follow up after Engle received an L5-S1 injection from Dr. Robert Francis Bowers a week earlier to treat his "severe, intractable and debilitating" pain. Tr. 709. Engle reported that he "had improvement that was total for about 24 hr." and "40% pain relief" that "only lasted about 3 days." Tr. 703-04. In the June 12 note, Engle reported significant pain that was ill-managed. His providers noted that he was "taking 6-7 hydrocodones at night to help with the pain." Tr. 460. After his nurse discussed proper use of his medication, Engle responded that "he can[']t help but take more medication due to the pain." *Id.* He also told his providers that he "can't wait for the MRI," which was scheduled for June 14, "in this much pain." *Id.* He also stated that "his right leg became numb last night and came out from under him at work." *Id.* His providers quoted him in their treatment notes as worrying, "what if my leg gives out again and I am paralyzed"? Tr. 459.

In other words, the treatment notes purportedly demonstrating that Engle was performing "physical demanding factory work" during the relevant period show that Engle was struggling to manage his pain while moving "diapers in cases" weighing less than ten pounds, "7-10 feet, daily." Although "an ALJ is not required to discuss every piece of evidence submitted," *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010), she may not "pick and choose only evidence in the record buttressing [her] conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (8th Cir. 2004). Here, the ALJ selected parts of the treatment notes favorable to a finding of nondisability, drew unsupported inferences from those notes, and ignored evidence not only calling into question the ALJ's characterization of Engle's daily

9

activities, but also demonstrating Engle's futile attempts at pain management. This information is critical in the *Polaski* analysis, which requires an ALJ to consider, among other things, the dosage, effectiveness and side effects of medication. *See* SSR 16-3p, 2017 WL 5180304, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.")

Setting aside the ALJ's discussion of Engle's "physically demanding" activities of daily life, the only other evidence cited by the ALJ that could potentially contradict Engle's statements about the limiting effects of his symptoms were his "largely unremarkable" physical examination findings. Tr. 20. Specifically, she noted: "the claimant ambulated with normal gait and station, without the need for an assistive device, and was able to perform heel and toe walking normally" (Tr. 20 citing Tr. 437, 455, 459), and "[t]he claimant did not exhibit any decreased sensation, diminished reflexes or motor weakness in his lower extremities." *Id.* citing Tr. 453.

The Court agrees that these clinical findings "speak generally" to Engle's physical abilities and functionality. *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020). But it fails to see that they contradict Engle's statements about the limiting effects of his symptoms; the ALJ appears to merely assume that these findings are irreconcilable with severe pain. *Cf. Gabriel v. Kijakazi*, No. 2003341CVSMDHSSA, 2022 WL 2078025, at *4 (W.D. Mo. June 9, 2022) (explaining that clinician's observation of Plaintiff ambulating without gait abnormality is not inconsistent with opinion that Plaintiff could only walk thirty minutes at a time because "walking across a doctor's office is less demanding than walking for thirty minutes."); *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (RFC "is not the ability merely to lift weights

10

occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.").

Even if the clinical findings contradicted Engle's statements about his symptoms, and Engle disputes that they do so,[5] the ALJ's decision is nonetheless critically lacking. Discounting a claimant's statements about the limiting effects of their symptoms is not equivalent to demonstrating by medical evidence that a claimant has the RFC to perform certain work-related activities. *Estabrook v. Apfel*, 14 F. Supp. 2d 1115, 1122 (S.D. Iowa 1998), cited approvingly in *Patton v. Colvin*, No. 2:14CV47 ACL, 2015 WL 3548823, at *17 (E.D. Mo. June 8, 2015) (memorandum and order). Instead, an ALJ must discuss and describe "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Sieveking v. Astrue*, Case No. 4:07 CV 986 DDN, 2008 WL 415674, at *9 (E.D. Mo. Sept. 2, 2008) (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). The ALJ did not undergo this process here. She merely concluded, without explanation: "A restriction to medium work, with the postural and reaching limitations outlined above, is reasonable." Tr. 20. She does not explain how the evidence supports her postural limitations at all.

An ALJ is not required to "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed." *Noerper*, 964 F.3d at 746. Here, that "something" is lacking. The ALJ failed to translate the clinical findings she discussed to Engle's

---

[5] Engle cites treatment notes reflecting: limping gait (Tr. 461), weak gait with stooped posture, using support of furniture, with short and shuffling steps (Tr. 463); reduced knee strength, positive straight leg raise (Tr. 714-15); and knee weakness, point tenderness at the sacral spine, and positive straight leg test (Tr. 726).

11

functional limitations. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports." (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004))). The Court will accordingly reverse the Commissioner's final decision and remand for a proper evaluation of Engle's RFC. On remand, the Commissioner will keep in mind an ALJ's duty to develop the record fully. *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). While this duty is not never ending, it requires the ALJ to order medical examinations and tests when the medical records presented to her do not furnish sufficient evidence to determine whether the claimant was disabled. *See Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 26th day of August 2024.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE